UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK R. KANE,

        Petitioner,               Case Number: 2:09-CV-12393

v.                                      HON. DENISE PAGE HOOD

THOMAS K. BELL,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Patrick R. Kane was convicted following a bench trial in the Cass County, Michigan circuit court of operating or maintaining a methamphetamine laboratory, Mich. Comp. Laws § 333.7401c(2)(f), conspiracy to operate or maintain a methamphetamine laboratory, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 333.7401c(2)(f), possession with intent to deliver methamphetamine, Mich. Comp. Laws § 333.7401(2)(b)(i), maintaining a drug house, Mich. Comp. Laws § 333.7405(1)(d), second-degree child abuse, Mich. Comp. Laws § 750.136b(3), possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, and possession of marijuana, Mich. Comp. Laws § 333.7403(2)(d). He was sentenced to 51 to 240 months' imprisonment for each of the methamphetamine-related convictions, to be served concurrently with one another, and consecutively to two years' imprisonment for the felony-firearm conviction. He was sentenced to time served for the maintaining a

drug house, second-degree child abuse, and possession of marijuana convictions. Petitioner presently is serving those sentences at the Gus Harrison Correctional Facility in Adrian, Michigan. He has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his convictions are unconstitutional because: they were obtained through the use of evidence gained pursuant to an illegal search and seizure, resulted from a *Brady* violation, he was denied effective assistance of trial and appellate counsel, and the trial court made several erroneous rulings. The Court finds that Petitioner is not entitled to habeas corpus relief and denies the petition.

## I.  Facts

Petitioner's convictions arise from a search of his home in Porter Township, Michigan, on May 24, 2005. Cass County Sheriff's Department Detective Philip Small testified that he had been trained in and was familiar with the processes used to manufacture methamphetamine, including the types of equipment used, the chemicals, and the chemical reactions. The Sheriff's Department received a tip that methamphetamine was being produced at 15286 Williamsville Road, Petitioner's home. On May 24, 2005, he and Detective Beth Davis went to the residence to conduct a "knock and talk." A "knock and talk" involves going to a residence, talking to the individuals and attempting to obtain consent to search the residence.

When Detectives Small and Davis knocked on the door, Petitioner and his son, Patrick Kane, Jr., answered the door. Detective Small informed them that police were investigating a report of methamphetamine production on the property. Petitioner stated

that Dawn Bainbridge Duncan, whom he called his common-law wife, had family members whose behavior he could not control. Specifically, he referred to Casey Bainbridge as someone over whom he had no control. Detective Small knew Bainbridge previously was incarcerated for methamphetamine production. Detective Small testified that Petitioner told him he could search the property but he did not want police to search the house.

While Detective Small spoke to Petitioner in the driveway, Detective Davis spoke to Petitioner's son, Patrick Kane, Jr. She asked Patrick Kane, Jr., whether anyone else was in the home because she smelled marijuana. She then asked him if she could enter the home. Detective Davis testified that Patrick Kane, Jr., gave her permission to enter. As Detective Davis and two other officers entered the home, Patrick Kane, Jr., grabbed something and tried to put it in his pocket. Detective Davis grabbed Kane, Jr.'s hand and determined that he clutched a bag containing marijuana.

Subsequently, a search warrant was obtained and executed to search the entire property and home. Detective Small testified that, on the property, he observed components commonly used to manufacture methamphetamine, including plastic bags filled with Sudafed boxes, ephedrine boxes, blister packs, and coffee filters. He also observed propane tanks, an air compressor tank, and ziplock bags with clear liquids.

Petitioner occupied the master bedroom with Dawn Duncan. The master bedroom was padlocked. Detective Davis testified that Petitioner unlocked the padlock for her. The items seized from the master bedroom included: scissors, mirrors, baggies, white

powdery residue, receipts, suspected marijuana, roach clips, seven long guns, one handgun, foils, filters, ten boxes of pseudoephedrine, an electronic scale, ledgers appearing to reflect sales of narcotics, and glass pipes.  Detective Davis testified that these and additional items seized from the master bedroom were consistent with the manufacture, use, and sale of methamphetamine.

Petitioner testified in his own defense.  He testified that, prior to his arrest, he had been considering moving out of his home because he did not approve of nor could he control what was going on there.  He testified that he did not conspire with anyone to make, sell or deliver methamphetamine, but admitted to occasionally using marijuana.  He was aware that Duncan had baggies containing methamphetamine residue in the home.  He repeatedly told her to dispose of them, but she never did.

## II. Procedural History

Following a bench trial, the trial court found Petitioner guilty as set forth above.  Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised the following claims:

> I.  Defendant's rights under the state and federal constitutions to be free from unreasonable search and seizure were denied and the trial court erred in denying defendant's motion to suppress, where there was disputed consent to enter the home between defendant, the homeowner, and his son, an occupant; the warrantless search was unreasonable as to defendant, the homeowner, where he was present and had expressly refused to consent to entry of his home.
>
> II.  Defendant was denied his right to due process and his right to present a defense by the prosecution's loss of evidence that was clearly potentially exculpatory; counsel was ineffective in failing to request a hearing and in

>    failing to request an instruction that the evidence would have been favorable to defendant.
>
> III.   Defendant was denied his state and federal constitutional right to due process and must be resentenced on counts 1, 2, and 3, where he was sentenced on the basis of an inaccurate sentencing information report.
>
> IV.   Defendant must be resentenced on counts 1, 2 and 3, where his sentences were increased based on facts neither proven to a jury beyond a reasonable doubt nor admitted by defendant, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Petitioner also filed a motion to remand to the trial court for an evidentiary hearing on his claim regarding the destruction of evidence. The Michigan Court of Appeals denied the motion to remand. *People v. Kane*, No. 267899 (Mich. Ct. App. Aug. 17, 2006). The state court affirmed Petitioner's convictions. *People v. Kane*, No. 267899, 2007 WL 1687581 (Mich. Ct. App. June 12, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Kane*, 480 Mich. 925 (Mich. Oct. 29, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises these claims:

> I.   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
>
> II.   Conviction obtained by the unconstitutional failure of the prosecution to disclose to defendant evidence favorable to defendant.
>
> III.   Denial of effective assistance of counsel.
>
> IV.   Abuse of discretion.

5

### III. Discussion

### A. Standard of Review

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F.Supp.2d 354, 359 (E.D. Mich.2002).

A federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### B. Fourth Amendment Claim

In his first claim for habeas corpus, Petitioner argues that his convictions are the result of evidence obtained through an unlawful search and seizure.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich.2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 135 N.W.2d 357, 358-59 (Mich.1965) (describing the availability of a pre-trial motion to suppress). Because Michigan provides a procedural mechanism for raising a Fourth Amendment claim, Petitioner may only demonstrate entitlement to relief if he establishes that presentation fo his claim was frustrated by a failure of that mechanism. This he has not done.

Petitioner raised the search and seizure issue prior to trial. The trial court denied the motion to suppress. Petitioner raised the issue on appeal in both the Michigan Court of Appeals and Michigan Supreme court. The Michigan Court of Appeals issued a lengthy opinion dealing directly with the issue. The Michigan Supreme Court denied leave to appeal.

Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the Michigan courts. Petitioner's disagreement with the state courts' conclusions on his Fourth Amendment claim does not render the state's

procedural mechanism inadequate. Therefore, Petitioner's Fourth Amendment claim is barred by the rule in *Stone v. Powell*.

### C.  Alleged *Brady* Violation

Petitioner next argues that he was deprived of his right to due process when the police destroyed potentially exculpatory evidence. When police arrived at Petitioner's home, one of the officers, Detective Small, was wearing a recording device. The recording device was described by Detective Small as a "transmitter," the information from which needs to be downloaded to a computer. Detective Small testified that the information was downloaded to a computer, but later lost when the computer to which it was downloaded became infected with a virus.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed.2d 281 (1988)." *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001). A defendant's due process rights are violated where material exculpatory evidence is not preserved *Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent

before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F.Supp.2d 664, 683 (E.D. Mich. 2003).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that Petitioner's rights were not violated because the evidence was not preserved. The state court, although not citing *Youngblood*, applied the standard articulated therein and held that Petitioner failed to show that the police acted in bad faith when they failed to preserve the potentially exculpatory tape. The Court of Appeals reasoned:

> Defendant cannot show bad faith on behalf of the prosecutor or the police in this case. Detective Small testified at trial that the sound recording was destroyed accidentally, when it was downloaded onto a computer that was infected with a virus. Defendant offered no contrary evidence, and there was no indication that Small was not testifying truthfully in this regard.

11

> Defendant failed to meet his burden of proving that the recording was lost
> or destroyed through the bad faith of the police.

*Kane*, slip op. at 3.

No evidence suggests that the tape recording contained exculpatory evidence. Therefore, as the state court noted, in order to prevail, Petitioner had to show bad faith. It was reasonable for the state court to conclude that the police did not act in bad faith. Detective Small described the functioning of the recording device and its download to a police computer. He explained the recording was not lost through a planned or intentional act. Petitioner has presented no evidence that would call into doubt Detective Small's testimony. Therefore, he has failed to show that the state court's decision was contrary to or an unreasonable application of *Youngblood*.

### D.  Ineffective Assistance of Counsel Claim

In his third claim, Petitioner argues that relief should be granted because he was denied the effective assistance of trial and appellate counsel. He argues that his two trial attorneys were ineffective in their handling of discovery and failing to secure the tape recording. He also argues that appellate counsel ineffectively presented his claim regarding the failed discovery requests; incorrectly framed the statement of facts in her brief, including misstatements of testimony and omitting relevant testimony; and failed to successfully challenge the search warrant.

Respondent argues that Petitioner's ineffective assistance of counsel claims and his fourth habeas claim are unexhausted because they were not presented in state court. A

petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Tornik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

Petitioner's ineffective assistance of trial counsel claim was properly exhausted. His ineffective assistance of appellate counsel and fourth habeas claim were not. A federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court). The Court has concluded that these claims do not warrant habeas corpus relief. Accordingly, in the interests of efficiency and justice, the Court will address Petitioner's claims rather than dismiss the petition on the ground of failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Cain*, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance

of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. at 788.

The Michigan Court of Appeals held that trial counsel's handling of the audio recording was not ineffective. The court reasoned that all evidence supported a finding that the destruction of the audio recording was accidental and lacking in bad faith. Therefore, a hearing on the issue was not necessary or relevant. The state court also found that an adverse inference instruction was not warranted in this case because Petitioner had not shown that the prosecutor acted in bad faith. Because such an instruction was not required, the Michigan Court of Appeals held that counsel was not

15

ineffective in failing to request one.

The Michigan Court of Appeals decision is supported by the record. Counsel attempted to discover the audio recording. All evidence tended to show its destruction was accidental. Petitioner has failed to satisfy the "doubly" deferential standard by which ineffective assistance of counsel claims are measured on habeas review. Therefore, habeas review is denied on his ineffective assistance of trial claim.

Petitioner next argues that appellate counsel was ineffective by: failing to adequately raise his lost-evidence claim; misstating the facts adduced at trial and omitting relevant testimony; and failing to successfully challenge the search warrant.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting Jones* 463 U.S. at 751-52).

Petitioner has failed to show that appellate counsel's handling of the lost evidence claim, the statement of facts in her brief, or her framing of the search warrant claim fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues, including challenges to the search of Petitioner's home and the lost evidence claim; and her statement of facts is comprehensive and accurate. Petitioner has not shown that appellate counsel's strategy in the presentation of those claims was deficient or unreasonable. Petitioner has failed to demonstrate that appellate counsel was ineffective.

### E.  Abuse of Discretion

Finally, Petitioner argues that the trial court abused its discretion because he evidenced bias by refusing to consider Petitioner's comments at the bond reduction hearing, failed to adequately inquire into the state of attorney-client communication between Petitioner and his first assigned attorney, Jonathan Slagh, limited examination on the issue of the lost audio tape during the suppression hearing, and denied second trial counsel Thomas Swisher's motion to withdraw.

An impartial judge is a necessary component of a fair trial. *In re Murchison*, 349 U.S. 133, 136 (1955). This Court is guided by the standard established by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), in addressing claims of judicial bias. In *Liteky*, the Supreme Court explained the measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a

> deep-seated favoritism or antagonism that would make fair judgment
> impossible. Thus, judicial remarks during the course of a trial that are
> critical or disapproving of, or even hostile to, counsel, the parties, or their
> cases, ordinarily do not support a bias or partiality challenge. They *may* do
> so if they reveal an opinion that derives from an extrajudicial source; and
> they *will* do so if they reveal such a high degree of favoritism or antagonism
> as to make fair judgment impossible.

*Id.* at 554.

On habeas review the inquiry focuses on whether the trial judge's conduct rendered the trial fundamentally unfair. "To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree." *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985).

Although Petitioner disagrees with many of the trial court's rulings, he has not shown that the judge relied on extrajudicial sources in rendering his decisions or that he showed any degree of favoritism for the prosecution or antagonism for the defense. Additionally, the record shows that the trial court granted attorney Jonathan Slagh's motion to withdraw. The trial court denied Thomas Swisher's motion to withdraw only after carefully considering the matter and concluding that Petitioner's dissatisfaction with counsel resulted not from inadequacies in counsel's performance, but from Petitioner's desire to delay trial. Finally, the record shows that the trial court allowed adequate cross-examination regarding the lost audio tape.

Habeas relief is denied on this claim.

### IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED**.

**SO ORDERED.**

                                              s/Denise Page Hood
                                              Denise Page Hood
                                              UNITED STATES DISTRICT JUDGE

Dated:  February 28, 2011

I hereby certify that a copy of the foregoing document was mailed to Patrick Kane #150165, Cooper Street Correctional Facility, 3100 Cooper Street, Jackson, MI 49201 and the attorneys of record on this date, February 28, 2011, by electronic and/or ordinary mail.

                                            s/LaShawn R. Saulsberry
                                            Relief Case Manager, (313) 234-5165